J. S55013/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| LAWRENCE JUSTIN MORRISON, | : | No. 2030 WDA 2014 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, November 13, 2014,
in the Court of Common Pleas of Cambria County
Criminal Division at Nos. CP-11-CR-0000225-2013,
CP-11-CR-0000239-2013, CP-11-CR-0000241-2013

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND STRASSBURGER, J.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED NOVEMBER 23, 2015**

Lawrence Justin Morrison appeals from the judgment of sentence entered on November 13, 2014, in the Court of Common Pleas of Cambria County in the above-captioned matters.  Finding no error below, we affirm.

On November 29, 2012, appellant was arrested in connection with eight burglaries over the span of several months involving multiple victims in Cambria County.  Upon his arrest, appellant was in possession of 5.51 grams of heroin.

Prior to his November 2012 arrest, appellant faced three unrelated criminal charges in Somerset County, including one count of possession with intent to deliver ("PWID") heroin, one count of criminal trespass, and one count of receiving stolen property.

---

* Retired Senior Judge assigned to the Superior Court.

Bail was set at $10,000 and on January 29, 2013, appellant was remanded to Cambria County Prison. (Docket #4.) Appellant filed a petition for bail reduction hearing. On February 28, 2013, appellant's petition for bail reduction was denied. Appellant was ordered to undergo drug and alcohol evaluation. (Docket #5.) On April 2, 2013, appellant pled guilty to the three Somerset County charges.[1] On June 26, 2013, appellant was transported from Cambria County Prison to Peniel Residential Drug and Alcohol Treatment Center to attend an interview. (Docket #12.) On July 16, 2013, appellant was voluntarily transferred from Cambria County Prison to Peniel. The treatment order specifically stated that appellant "must remain at Peniel until he successfully completes the program . . . If he leaves the program, he will be considered a fugitive and escapee and immediately be placed in the Cambria County Prison." (Order, 7/15/13 at 1; Docket #13.)

On October 22, 2013, appellant pled guilty in the Cambria County cases to one count of PWID (drug trafficking case docketed at CP-11-CR-0000239-2013, hereinafter "Case No. 239-2013"), three counts of burglary, two counts of criminal trespass, two counts of theft by unlawful taking, and one count of criminal conspiracy. At the plea hearing, appellant requested a continuance of his sentencing in all cases so that he could remain at Peniel

---

[1] The Somerset County cases were then consolidated with the Cambria County cases.

and continue his drug rehabilitation treatment. At that point, he had been at

Peniel for approximately three months. The trial court granted his request.

The following exchange between the trial court and appellant took place:

> THE COURT: Okay. First a question. I took the plea in the previous cases, and obviously I took the plea in these cases. How did he get to Peniel without my order?
>
> DEFENSE ATTORNEY: Your Honor, in the interim time period, he, obviously these offenses occurred unfortunately, and a bond hearing was set before another judge, and he was sent to Peniel as a condition of bond rather than the usual method, which was and which is basically, as I understand it, the requirement is the person, that my client enter a guilty plea, and then goes to Peniel in order to prove to the court or have the chance to prove to the Court that they, you know, to basically develop a record of treatment at Peniel in order to obtain that advantage of consideration for them at sentencing. There somehow was a miscommunication where other judge sent him as a condition of bond.
>
> . . . .
>
> DEFENSE COUNSEL: . . . he's doing very well there, and . . . they do want to keep him there and hope that he remains there and completes their program, and that had been confirmed previously . . . at the time we started negotiating this plea.
>
> . . . .
>
> THE COURT: . . . somehow you were lucky enough to get into Peniel, and I also have an obligation to society here, and if we can get you off that habit, then for the next presumably for the next 40 to 50 years, we don't have to worry about crimes like this. So, I'm at cross purposes here. I want you to be rehabilitated, but on the other hand, and in

addition, you've got roughly $50,000 worth of restitution that you're going to be responsible for.

So I want these victims to be paid. At this juncture, I have two choices. I either sentence you to a sentence that I think is appropriate, which would be a long sentence or I give you a chance at Peniel and see what happens.

. . . .

THE COURT: . . . I'll grant your request for the continuance of both of these sentences. We'll see what you get at Peniel, see how you did at Peniel, and then I'll sentence you accordingly. I may give you credit for the time in Peniel or I may not. It depends on what happens. That ball is in your court. But I want you to know there's no promises here. I'm going to let you go to Peniel, and we'll see how you do, and then we're going to revisit things for your resentencing. Do you understand that?

THE DEFENDANT: Yes, sir.

Guilty plea transcript, 10/22/13 at 13-15.

On January 23, 2014, appellant was unsuccessfully discharged from Peniel because he threatened to stab another resident in the neck with a screwdriver. (Sentencing transcript, 2/7/14 at 5.)

On February 7, 2014, the trial court sentenced appellant as to all cases from Somerset and Cambria Counties. Appellant received an overall state sentence of 6 years to 12 years,[2] with Recidivism Risk Reduction Incentive ("RRRI") Program[3] eligibility, and credit for time served at Cambria County

---

[2] Appellant was sentenced to 3 to 6 years in Case No. 239-2013.

[3] 42 Pa.C.S.A. § 5303.

Prison, but not at Peniel. Appellant was also ordered to pay $53,771 in restitution to his victims.

Appellant filed a *pro se* petition for post-conviction collateral relief asserting ineffective assistance of counsel and arguing that his sentence was unconstitutional and illegal, pursuant to *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151 (2013) (holding that facts that increase mandatory minimum sentences must be submitted to the jury and must be found beyond a reasonable doubt); and *Commonwealth v. Cardwell*, 105 A.3d 748, 751 (Pa.Super. 2014), *appeal denied*, 121 A.3d 494 (Pa. 2015) (applying *Alleyne* and recognizing that the mandatory minimum sentences associated with the weight of narcotics possessed by a drug dealer pursuant to 18 Pa.C.S.A. § 7508 are unconstitutional). The trial court appointed PCRA counsel, and a hearing was held on October 13, 2014, relative to the amended PCRA petition. A re-sentencing hearing was held on November 12, 2014. The Commonwealth conceded that appellant received an illegal 3-year minimum sentence in Case No. 239-2013. That sentence was vacated and the trial court considered the parties' arguments for re-sentencing.

Appellant requested a mitigated sentence and for all counts to run concurrently due to the following factors: the court's comment at the PCRA hearing that "it had hope for" appellant; drug addiction is a terrible disease; appellant is a young man and has a child; appellant completed the victim

awareness program at prison; favorable correspondence from appellant's pastor; appellant is participating in the GED program at prison; appellant's strong family support; and appellant had no prison violations. (Re-sentencing hearing transcript, 11/12/14, at 2-4.) Appellant also requested credit towards his sentence for the approximately 6 months he spent at Peniel (from July 16, 2013, to January 23, 2014).

The Commonwealth, in response, requested an increased sentence of 10 to 20 years, followed by a long probationary period. The Commonwealth reintroduced one victim statement; noted that appellant's prior record score was actually 5 (not 4 as previously determined at the February 7, 2014, sentencing hearing); and criticized appellant's dishonesty at the PCRA hearing relative to promises his defense counsel supposedly made to him regarding his sentence. (*Id.* at 7, 11-12.)

Following the arguments of counsel, the trial court re-sentenced appellant at Case No. 239-2013 outside of the standard range to an aggravated sentence of state imprisonment of 3-6 years, with RRRI eligibility, and credit for time served in prison, but not in Peniel. Relative to all other counts, the trial court ordered that the sentences imposed on February 7, 2014, were to remain the same. In imposing this sentence, the trial court acknowledged that appellant's standard range, relative to Case No. 239-2013, was 18 months to 24 months and the aggravated range was 36 months. The trial court declined to adopt a higher prior record score of 5

on the grounds that the Commonwealth should have questioned any inaccuracy at the February 7, 2014 sentencing hearing. Further, the trial court deemed all of the factors set forth by the Commonwealth as aggravating factors. Overall, that resulted in a 6 to 12-year total sentence with RRRI eligibility.

On appeal, appellant raises two issues:

> 1. Whether the Trial Court erred in not giving the Appellant credit for the approximately 6 months spent in Peniel (an in-patient drug rehabilitation facility)?
>
> 2. Whether the Trial Court erred in not sentencing the Appellant to the case docketed at 239-2013 in a mitigated range at the low end of the Sentencing Guidelines, by failing to consider a number of mitigating factors, including, but not limited to his young age, his family and spiritual support, the progress for self-development he made while incarcerated, and his sincere remorsefulness for his crimes?

Appellant's brief at 4.

First, appellant argues that the trial court erred when it denied him six months' credit for his time spent at Peniel. We disagree.

Generally, it is within the trial court's discretion whether to credit time spent in an institutionalized rehabilitation and treatment program as time served "in custody." *Commonwealth v. Conahan*, 589 A.2d 1107 (Pa. 1991), *Commonwealth v. Mincone*, 592 A.2d 1375 (Pa.Super. 1991) (*en banc*).

In **Commonwealth v. Fowler**, 930 A.2d 586 (Pa.Super. 2007), this court upheld the trial court's refusal to reward a defendant's actions with credit for time served where the defendant failed to successfully complete inpatient drug treatment. In that case, the defendant pled guilty to various drug charges and requested the opportunity to participate in the Erie County Drug Court. His participation in the Drug Court Program was voluntary. He signed an agreement which demonstrated that he understood the consequences of failing to adhere to the program requirements:

> I understand that if I am dismissed from the drug court program prior to satisfactory completion, my case will be listed for trial in the next term of criminal court and I will have to take my case to trial or enter a plea as if I had never been a participant in the drug court program.

**Id.** at 597.

As it turned out, defendant failed to attend treatment as directed. He failed to abstain from the possession and consumption of alcohol, failed to abstain from the possession and consumption of controlled substances, and failed to submit urine samples as directed. **Id.** at 589 n.5. Because the defendant misused and abused the many opportunities for rehabilitation without incarceration, we held that the court's decision to refuse credit for time served at the Drug Court Program was entirely within its purview.

Here, as in **Fowler**, appellant requested the opportunity to voluntarily enter Peniel to resolve his drug addiction prior to sentencing. The trial court made no promises to appellant and very candidly explained to appellant that

credit for time in Peniel would depend on his progress and successful completion of the program. As noted, appellant clearly understood the consequences of failing to adhere to the program's requirements. Appellant was unsuccessfully expelled from the program when he threatened another participant. The trial court explained its rationale for denying credit:

> [T]he opportunity to participate in the Peniel program is a privilege. Requests for admission far exceed the available bed space. Accordingly, when an applicant qualifies and the Court grants a request for admission, that applicant is prioritized over other applicants. The only possible way to maintain continuity and fairness is to reward those who successfully complete the program and withhold reward from those who fail. This Court has never given credit for time served at Peniel to those who have been unsuccessfully discharged from the program. Any other policy by the Court would result in manifest unfairness and inequality.

Trial court opinion, 12/11/14 at 5.

Appellant argues that his expulsion should not nullify the six months of "good time" he spent at Peniel. He claims that Peniel is a very restrictive, custodial environment, and that the time he spent there was served in lieu of incarceration at the Cambria County Prison. (Appellant's brief at 8 and 11.) He relies on **Commonwealth v. Frye**, 853 A.2d 1062 (Pa.Super. 2004). Appellant argues that even though the defendant in **Frye** violated the terms of her probation, she received credit on her sentence for time spent "in custody" on house arrest. Appellant contends that likewise, even though he did not successfully complete the Peniel program, he nevertheless

should be given credit for the six months of "good time" he spent there before he was expelled.

We find **Frye** is distinguishable. The **Frye** court did not consider the issue of whether the defendant forfeited her right to receive credit by failing to successfully complete a voluntary pre-sentencing drug rehabilitation **program**.[4]

Here, appellant could not make bail. He was originally transferred from Cambria County Prison to Peniel voluntarily while awaiting trial and/or a plea. At the October 22, 2013, plea hearing, appellant pled guilty to the Cambria County charges. He had already pled guilty to the Somerset County charges. He was slated for prison. However, he asked the trial court for mercy, to postpone his sentencing so that he could remain at Peniel to overcome his heroin addiction, and to have the chance to prove to the sentencing court that he voluntarily received treatment. As his counsel explained during the guilty plea hearing on October 22, 2013, attending Peniel was an opportunity for appellant to obtain "an advantage or consideration" of his treatment at sentencing. (Guilty plea hearing,

---

[4] As appellant notes, the issue in **Frye** was whether the terms of the defendant's house arrest were sufficiently restrictive to count as custody time. The court did not address whether the defendant forfeited credit for the "good time" time she spent on house arrest in light of her probation violation. In any event, **Frye** has been abrogated by **Commonwealth v. Kyle**, 874 A.2d 12 (Pa. 2005), which precludes a defendant from receiving credit for the time spent under house arrest. Here, whether Peniel was sufficiently "prison-like" under **Conahan** was not an issue that was raised by the parties nor addressed by the trial court.

10/22/13 at 12.) Appellant's attendance at Peniel was a privilege, not a sentence. **Fowler** clearly gives the trial court discretion to decide whether time spent completing this type of program should be credited towards a sentence. The trial court clearly indicated to appellant in advance that it would consider crediting the time spent at Peniel if appellant successfully completed the program.

The trial court did not abuse its discretion when it refused to credit appellant for the time spent at Peniel due to his unsuccessful discharge from the program. We wholly agree with the trial court that credit for a voluntary inpatient drug treatment should be commensurate with successful completion of inpatient treatment. Appellant's expulsion from the program was tantamount to his not participating at all. The trial court acted well within its discretion in denying credit for time served under the facts of this case.

In his second issue, appellant asserts that the trial court imposed a sentence at Case No. 239-2013 in the aggravated range without considering mitigating circumstances. Specifically, he contends that the trial court failed to consider his young age, his family and spiritual support, the progress for self-development he made while incarcerated, and his sincere remorsefulness for his crimes.

Appellant's claim challenges the discretionary aspects of his sentence.

***Commonwealth v. Hyland***, 875 A.2d 1175 (Pa.Super. 2005), ***appeal denied***, 890 A.2d 1057 (Pa. 2005).

> A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute. Two requirements must be met before we will review this challenge on its merits. First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis. In order to establish a substantial question, the appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process.

***Commonwealth v. McAfee***, 849 A.2d 270, 274 (Pa.Super. 2004) (internal citations omitted).

Appellant's brief contains the requisite Rule 2119(f) concise statement and, as such, is in technical compliance with the requirements to challenge the discretionary aspects of a sentence. (***See*** appellant's brief at 7.) Therefore, we proceed to determine whether appellant has presented a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. ***See McAfee***, 849 A.2d at 274.

A substantial question is raised where an appellant alleges the sentencing court erred by imposing an aggravated range sentence without

consideration of mitigating circumstances. ***Commonwealth v. Felmlee***, 828 A.2d 1105 (Pa.Super. 2003) (***en banc***); ***Hyland***, ***supra***.

As presented, appellant appears to raise a substantial question as to the discretionary aspects of his sentence. ***See id***. Thus, we will review his claim.

"If the sentence is within the aggravated range, the sentencing court is . . . required to state its reasons for choosing an aggravated sentence on . . . the record. . . ." ***Commonwealth v. Rodda***, 723 A.2d 212, 217 (Pa.Super. 1999) (***en banc***). In addition, "the sentencing guidelines are advisory, and when justified, a court acts well within its discretion to sentence outside the recommended ranges." ***Commonwealth v. P.L.S.***, 894 A.2d 120, 128 (Pa.Super. 2006).

> [I]n exercising its discretion, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the life of the victim and the community, so long as he also states of record the factual basis and specific reasons which compelled him to deviate from the guideline range. The sentencing guidelines are merely advisory and the sentencing court may sentence a defendant outside of the guidelines so long as it places its reasons for the deviation on the record.

***Id.*** at 130–131 (citation omitted).

Instantly, the trial court thoroughly considered the totality of requirements mandated by Pennsylvania law including consideration of the

substantial amount of restitution at issue, the need to ensure the safety of the community, the input of the victims, the protection of the public, and the serious nature of the crimes. (Trial court opinion, 12/11/14 at 7.) We further observe that the trial court was intimately familiar with appellant's personal circumstances as it had handled appellant's juvenile caseload for numerous years. The trial court reviewed the pre-sentence investigation report in this case, and that report is included in the certified record. Our supreme court has held that a sentencing court which has received a pre-sentence investigation report is considered to have been fully informed of the relevant factors prior to sentencing. ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

The trial court acknowledged appellant's expression of remorse for his actions, but found that appellant's circumstances called for the sentences imposed. Moreover, the trial court noted that it gave appellant the benefit of the doubt by utilizing a prior record score of 4 instead of adopting the Commonwealth's argument that the guidelines be calculated with a prior record score of 5. The trial court also noted that it very well could have imposed consecutive sentences in the low end of the standard ranges relative to all 12 counts, and appellant could have received an overall sentence of 10½ to 21 years, instead of the 6 to 12-year sentence he received.

Based on all of the foregoing, we are satisfied that the sentencing court sufficiently stated its reasons for the sentences imposed and adequately articulated the aggravating circumstances justifying a departure from the recommended sentencing guidelines and the sentence in the aggravated range of the guidelines. We therefore find no abuse of discretion in the sentence imposed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2015